E-FILED
Friday, 28 August, 2026 09:36:34 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **PIASA ARMORY, LLC** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 26-cv-3280** |
| | ) | |
| **Kwame Roul, in his official capacity** | ) | |
| **as Attorney General of the** | ) | |
| **State of Illinois,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT**

COMES NOW, Piasa Armory, LLC, by their attorney, complaining of Kwame Raoul, in his official capacity as Attorney General of the State of Illinois, to wit:

**COUNT I**

1. Piasa Armory is a dealer of firearms and firearm accessories, located at 3685 East Broadway, Alton, IL 62002 that engages in retail sale of the aforementioned, and advertises among other places at piasaarmory.com.

2. Kwame Routl, named in his official capacity only, is the Attorney General of the State of Illinois, acting under color of state law in the enforcement of HB0218.

3. Governor J.B. Pritzker signed into law HB0218 as codified 815 ILCS 505/2BBB of the Illinois Consumer Fraud and Deceptive Business Practices Act, also known as PA-103-0559, a copy of which is attached hereto.

4. Under HB0218, a dealer of firearms and firearm accessories, including Piasa Armory, LLC, may potentially be named in a civil action as a defendant by the Attorney General of Illinois for third parties misuse of firearms and firearms products. 815 ILCS

505/2BBB

5. The Protection of Lawful Commerce in Arms Act ("PLCAA") immunizes under federal law civil actions against gun dealers for criminal or unlawful misuse of a qualified product, including firearms, by a third party, subject to narrow exceptions that do not apply. 15 U.S.C. 7902

6. HB0218 violates the Supremacy Clause of the Constitution of the United States by conflicting with federal law that occupies the field at issue.

7. That this action is brought pursuant to 42 U.S.C. 1983.

WHEREFORE, Piasa Armory, LLC, by their attorney, requests a declaration that 815 ILCS 505/2BBB is unconstitutional, an injunction barring its enforcement, plus any other relief deemed equitable and just, including costs and attorney's fees pursuant to 42 U.S.C. 1988.

COUNT 11

COMES NOW, Piasa Armory, LLC, by their attorney, complaining of Kwame Raoul, in his official capacity as Attorney General of the State of Illinois, to wit:

1. Piasa Armory is a dealer of firearms and firearm accessories, located at 3685 East Broadway, Alton, IL 62002 that engages in retail sale of the aforementioned, and advertises among other places at piasaarmory.com.

2. Kwame Routl, named in his official capacity only, is the Attorney General of the State of Illinois, acting under color of state law in the enforcement of HB0218.

3. Governor J.B. Pritzker signed into law HB0218 as codified 815 ILCS 505/2BBB of the Illinois Consumer Fraud and Deceptive Business Practices Act, a copy of which is attached hereto, and is also known as PA-103-0559.

4. Under HB0218, a dealer of firearms and firearm accessories, including Piasa Armory, LLC, may potentially be named in a civil action as a defendant by the Attorney General

of Illinois for third parties misuse of products. 815 ILCS505/2BBB

5. HB0218 is void for vagueness in that renders unlawful conduct that allegedly "create, maintain, or contribute to a condition in Illinois that endangers the safety or health of the public either unlawful in itself or unreasonable under all circumstances 815 ILCS 505/2BBB-(b)(l), leaving uncertain what speech is even targeted, and thus is unconstitutional under the First and 14th Amendments.

6. This action is brought pursuant to 42 U.S.C. 1983.

WHEREFORE, Piasa Armory, LLC, by their attorney, requests a declaration that 815 ILCS 505/2BBB is unconstitutional, an injunction barring its enforcement, plus any other relief deemed equitable and just, including costs and attorney's fees pursuant to 42 U.S.C. 1988..

COUNT 11I

COMES NOW, Piasa Armory, LLC, by their attorney, complaining of Kwame Raoul, in his official capacity as Attorney General of the State of Illinois, to wit:

l . Piasa Armory is a dealer of firearms and firearm accessories, located at 3685 East Broadway, Alton, IL 62002 that engages in retail sale of the aforementioned, and advertises among other places at piasaarmory.com.

2. Kwame Routl, named in his official capacity only, is the Attorney General of the State of Illinois, acting under color of state law in the enforcement of HB0218.

Under HB0218, a dealer accessories, including Piasa Armory, LLC, may potentially be named in a civil action as a defendant by the Attorney General of Illinois for third parties misuse of firearms and firearms products. 815 ILCS 505/2BBB.

3. Governor J.B. Pritzker signed into law HB0218 as codified 815 ILCS 505/2BBB of the Illinois Consumer Fraud and Deceptive Business Practices Act, a copy of which is attached hereto.

4. HB0218 violates the Second Amendment, and Fourteenth Amendment as incorporated to the states, of the United States Constitution by seeking to impose liability that is inconsistent with this Nation's historical tradition. N.Y. State Rifle & Pistol Ass'n v.

Bruen, 142 S.Ct. 21 1 1, 2126 (2022).

WHEREFORE, Piasa Armory, LLC, by their attorney, requests a declaration that 815 ILCS 505/2BBB is unconstitutional, an injunction barring its enforcement, plus any other relief deemed equitable and just, including costs and attorney's fees pursuant to 42 U.S.C. 1988.

COUNT IV

COMES NOW, Piasa Armory, LLC, by their attorney, complaining of Kwame Raoul, in his official capacity as Attorney General of the State of Illinois, to wit:

1. Piasa Armory is a dealer of firearms and firearm accessories, located at 3685 East Broadway, Alton, IL 62002 that engages in retail sale of the aforementioned, and advertises among other places at piasaarmory.com.

2. Kwame Routl, named in his official capacity only, is the Attorney General of the State of Illinois, acting under color of state law in the enforcement of HB0218.

3. Governor J.B. Pritzker signed into law HB0218 as codified 815 ILCS 505/2BBB of the Illinois Consumer Fraud and Deceptive Business Practices Act, a copy of which is attached hereto..

4. Under HB0218, a dealer for firearm and firearm accessories, including Piasa Armory, LLC, may potentially be named in a civil action as a defendant by the Attorney General of Illinois for third parties misuse of firearms and firearms products. 815 ILCS 505/2BBB

5. That at all times relevant, the Illinois Constitution, Article IV, Section 8, requires bills to be read, including their name, on three separate days in each chamber of the general assembly before it may be passed.

6. That in violation of Article IV, Section 8, the Illinois General Assembly took a shell bill, that was to make a punctuation change to the Code of Civil Procedure, gutted it, and replaced all of its text with the presently offending purported statute, and in the process, failed to actually comply with Article IV, Section 8.

7. As a proximate cause, the challenged purported statute is void ab initio.

WHEREFORE, Piasa Armory, LLC, by their attorney, requests a declaration that 815 ILCS 505/2BBB is unconstitutional, an injunction barring its enforcement, plus any other relief deemed equitable and just, including costs and attorney's fees pursuant to the Illinois Civil Rights Act of 2003.

COUNT V

COMES NOW, Piasa Armory, LLC, by their attorney, complaining of Kwame Raoul, in his official capacity as Attorney General of the State of Illinois, to wit:

1. Piasa Armory is a dealer of firearms and firearm accessories, located at 3685 East Broadway, Alton, IL 62002 that engages in retail sale of the aforementioned, and advertises among other places at piasaarmory.com.

2. Kwame Routl, named in his official capacity only, is the Attorney General of the State of Illinois, acting under color of state law in the enforcement of HB0218.

3. Governor J.B. Pritzker signed into law HB0218 as codified 815 ILCS 505/2BBB of the Illinois Consumer Fraud and Deceptive Business Practices Act, a copy of which is attached hereto..

4. That Plaintiff brings a constitutional claim challenging said bill, under 42 USC 1983, and the First and 14th Amendments.

5. Plaintiffs bring this suit to challenge the constitutionality of the above referenced bill and statute, which makes it unlawful for any “firearm industry member” to “advertise, market, or

arrange for placement of an advertising or marketing communication concerning any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors."

6. The First Amendment fully protects pure political, ideological, and educational speech. Content- and viewpoint-based restrictions on such speech are especially repugnant to the People's right to free speech. Indeed, "above all else, the First Amendment means that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." Police Dep't v. Mosley, 408 U.S. 92, 95 (1972); see also The Constitution thus "demands that content-based restrictions on speech be presumed invalid . . . and that the Government bear the burden of showing their constitutionality." Ashcroft v. Am. Civil Libs. Union, 535 U.S. 564, 573 (2002).

7. The statute imposes a content- and speaker-based restriction on protected speech that is viewpoint discriminatory, that serves no legitimate government interest (directly or indirectly), and that is both facially overbroad and far more extensive than necessary to achieve any purported interest. It thus violates Plaintiffs' free speech and commercial speech rights.

8. The First Amendment also protects the right to peaceably assemble and associate. The right to assemble often merges with the right to free expression.

For "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 460 (1959). "Governmental action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." Id. at 461-62 (emphasis added).

9. The statute effectively curtails the rights to assemble and associate because it directly prohibits advertising, marketing, or arranging for the placement of advertising or marketing promoting various firearm-related events and programs, where Plaintiffs peaceably and lawfully assemble and associate with each other and members of the public. It also impermissibly restricts pro-gun (but not anti-gun) organizations from promoting membership in or financial support of their organizations in ways that might be deemed "attractive to minors."

9. Finally, for many of the reasons section the statute violates Plaintiffs' right to engage in free speech, it also violates their right to equal protection under the law.

10. What's more, the statute clearly violates well- established free speech precedents of the U.S. Supreme Court, making the law frivolous on its face. This may very well have the effect of forcing the Defendant to defend this statute by making legal contentions that are not warranted by existing law, or even abandoning the defense and enforcement of this statute altogether. See

generally, Perry v. Proposition 8 Official Proponents, 587 F.3d 947 (9th Cir. 2009). Ultimately, this is what happened in California with its version of the same statute.

11. Because the statute violates rights protected by the First and Fourteenth Amendments, Plaintiffs seek equitable relief declaring the law invalid and enjoining its enforcement by Defendants, as well as their successors in office.

12. The First Amendment provides, in part, that "Congress shall make no law . . . abridging the freedom of speech," U.S. Const. amend. I. It is incorporated and made applicable to the states by the Fourteenth Amendment to the United States Constitution and by 42 U.S.C. § 1983.

13. The First Amendment does not tolerate the suppression of speech based on what some may label an unpopular viewpoint of the speaker. John J. Hurley and S. Boston Allied War Vets. Council v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston, 515 U.S. 557 (1995). Indeed, "above all else, the First Amendment means that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." Mosley, 408 U.S. at 95

14. A content-based restriction that implicates political or ideological speech must generally survive "strict scrutiny," where the government must show that the law is narrowly tailored to achieve a compelling government interest. See Reed v. Town of Gilbert, 576 U.S. 155 (2015); see also Lorillard Tobacco Co. v. Reilly, 533 U.S. 525 (2001) (holding that tobacco marketing restrictions – even those purposed to protecting minors -- must be the narrowest means of achieving an asserted state interest); Brown v. Entm't Merchs. Ass'n, 564 U.S. 786 (2011) (overturing California law banning sale or rental of "violent video games" to minors); see also Tracy Rifle & Pistol LLC v. Harris, 339 F. Supp. 3d 1007, 1018 (E.D. Cal. 2018) (holding that a

California law prohibiting the display of a handgun, an imitation handgun, or a placard advertising the sale of a handgun in a manner that is visible from the outside of a gun dealer's premises is unconstitutional).

15. Even purely commercial speech—speech that "does no more than propose a commercial transaction" or relates solely to the economic interests of the speaker and audience—receives First Amendment protection if it is not misleading and concerns a lawful activity. Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n, 447 U.S. 557 (1980).

16. "An offer to sell firearms or ammunition" is constitutionally protected commercial speech. Nordyke v. Santa Clara, 110 F.3d 707, 710 (9th Cir. 2009).

17. Government restrictions on protected commercial speech are constitutional only if they directly advance a substantial government interest and are not broader than necessary to serve that interest. Cent. Hudson, 447 U.S. 557.2

18. Though this is currently the controlling test for so-called "commercial speech," modern case law is trending toward extending full First Amendment protection to all speech, including "commercial speech." See Sorrell v. IMS Health, Inc., 564 U.S. 552 (moving toward providing commercial speech the same level of heightened protection long accorded to political speech)

19. The First Amendment protects not only the right of free speech, but also "the right of the people peaceably to assemble." U.S. Const., amend. I. The right to assemble often merges with the right to free expression. For "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." NAACP v. Patterson, 357 U.S. 449, 462 (1958). "Governmental action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." Id. at 461-62.

20. The Fourteenth Amendment to the United States Constitution, enforceable under 42 U.S.C. § 1983, provides that no state shall deny to any person within its jurisdiction the equal protection of the laws.

21. Singling out speakers because of the content of their speech also violates their fundamental rights under the Equal Protection Clause. U.S. Const. amend. XIV..

22. If unequal treatment occurs in the context of exercising a fundamental right, or the government is motivated by animus toward a disfavored group, courts apply heighted scrutiny. See Loving v. Virginia, 388 U.S. 1, 11 (1967); see also Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432 (1985); Romer v. Evans, 517 U.S. 620 (1996). Indeed, "[b]ecause the right to engage in political expression is fundamental to our constitutional system, statutory classifications impinging upon that right must be narrowly tailored to serve a compelling governmental interest." Austin v. Mich. Chamber of Commerce, 494 U.S. 652, 666 (1990), rev'd on other grounds, Citzs. United v. Fed. Elec. Comm'n, 558 U.S. 310, 130 S. Ct. 876 (2010).

23. That the challenged statute makes it unlawful for any "firearm industry member" to "advertise, market, or arrange for placement of an advertising or marketing communication concerning any firearm-related product in a manner that is designed, intended, or reasonably appears to be attractive to minors."

24. Specifically, under the offending statute, "a court shall consider the totality of the circumstances." This includes, but is not limited to, considering whether the marketing or advertising:

(A) Uses caricatures that reasonably appear to be minors or cartoon characters to promote firearm-related products.

(B) Offers brand name merchandise for minors, including, but not limited to, hats, t-shirts, or other clothing, or toys, games, or stuffed animals, that promotes a firearm industry member or firearm-related product.

(C) Offers firearm-related products in sizes, colors, or designs that are specifically designed to be used by, or appeal to, minors.

(D) Is part of a marketing or advertising campaign designed with the intent to appeal to minors.

(E) Uses images or depictions of minors in advertising and marketing materials to depict the use of firearm-related

(F) Is placed in a publication created for the purpose of

reaching an audience that is predominately composed of minors and not intend

25. The statute defines "firearm industry members" in two ways:

(A) A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association engaged in the manufacture, distribution, importation, marketing, wholesale, or retail sale of firearm-related products.

(B) A person, firm, corporation, company, partnership, society, joint stock company, or any other entity or association formed for the express purpose of promoting, encouraging, or advocating for the purchase, use, or ownership of firearm-related products that does one of the following:

(i) Advertises firearm-related products. (ii) Advertises events where firearm-related products are sold or used. (iii) Endorses specific firearm-related products.

(iv) Sponsors or otherwise promotes events at which firearm-related products are sold or used.

26. The statute does not bar members of the (politically popular) book, movie, television, and video game industries from "advertising, marketing, or arranging for the placement of an advertising or marketing communication concerning any firearm-related product"

27. The statute does, however, apply to (politically unpopular, especially under the current Illinois regime) organizations formed to promote and preserve the Second Amendment rights to keep and bear arms, organizations that offer competitive and recreational shooting programs, businesses that offer shooting skills courses and/or firearm-safety training, and gun show promoters, as well as firearms manufacturers and retailers.

28. The terms of the statute are defined in the statute and incorporated herein.

29. The statute is thus not limited to advertising or marketing communications that propose an economic transaction like the purchase or sale of "firearm-related products," including firearms, ammunition, reloaded ammunition, firearm precursor parts, firearm components, or firearm accessories.

30. Rather, it applies to any communication, made in exchange for monetary compensation, "concerning a firearm-related product" that is "designed, intended or reasonably [appears] to be attractive to youth" if the communication is made by a "firearm industry member" for the purpose of encouraging "recipients of the communication to purchase or use the product or service."

31. The statute also bans a broad category of pure speech, including, but not limited to:

a. All (or nearly all) aspects of youth hunting and shooting magazines and the websites, social media, and other communications promoting those magazines;

b. Articles, cartoons (including political cartoons), and photographs promoting or depicting the use of "firearm-related products" by minors in magazines intended for a broader audience including adults;

c. Videos, cartoons, coloring books, posters, social media posts, and youth education campaigns by gun rights organizations and/or firearms trainers encouraging youth to take up lawful recreational or competitive shooting activities or teaching about firearm safety;

d. Branded merchandise, giveaways, or "swag"— including, but not limited to, t-shirts, hats, other clothing, stickers, pins, buttons, toys, games, and stuffed animals—by a "firearm industry member" that promotes a "firearm industry member," including nonprofit Second Amendment organizations, or contains pro-gun slogans and political messages;

e. Any communication made by a "firearm industry member" "in exchange for monetary compensation" that encourages the recipient of the communication to exercise their Second Amendment rights to purchase or use firearms or other firearms-related products generally, like coaching or speaking with youth about taking firearms training or getting involved with a youth shooting team; f. Youth firearm- and hunter-safety courses and youth shooting skills courses, as well as recommendations or endorsements by firearms trainers concerning the most appropriate firearms, ammunition, and accessories for young and beginner shooters; and g. Signage, flyers, posters, discussions, branded merchandise and giveaways, and/or other communications generally depicting minors enjoying

or otherwise encouraging minors to enjoy their Second Amendment right to possess and use lawful firearms for lawful purposes at youth recreational and competitive shooting events, as well as communications promoting such events;

h. Use of Daisy® BB guns, like the famous Daisy® Red Ryder, and the Daisy® inflatable BB Gun Range and similar products by gun-rights organizations at events to introduce youth to firearms—usually for the very first time—in a safe and controlled environment in order to encourage youth to take up the shooting sports and/or become youth members of the sponsoring organization; and

i. Communications soliciting funds for scholarships and grants for youth shooters and youth shooting teams.

32. By the terms of the statute, various penalties, including attorney fees and injunctions apply to persons like Plaintiff, but does not award fees to a successful defendant, even where the case brought was facially frivolous of malicious.

33. Plaintiff regularly "advertise, market, or arrange for placement of an advertising or marketing communication concerning … firearm-related product[s] in a manner that is designed, intended, or [might] reasonably appear[] to be attractive to minors."

34. Specifically, Plaintiff engages in the planning, advertising, marketing, promoting, sponsoring, hosting, and/or facilitating of lawful events, competitions, trainings, educational programs, safety courses, and/or gun shows, specifically for youth or where youth are extremely likely to be in attendance and where youth lawfully use, handle, observe, and/or otherwise possess firearms, ammunition, and/or firearm parts.

35. These programs regularly involve signage, flyers, discussions, branded merchandise and giveaways, and/or other communications depicting minors enjoying or otherwise encouraging minors to enjoy their Second Amendment right to possess and use lawful firearms for lawful purposes, including hunting, recreational and competitive shooting, and firearm safety programs.

36. Plaintiff also widely distribute printed and electronic communications promoting these events and programs. These communications have regularly included images and/or depictions of minors handling or "using firearm-related products."

37. As a result of the adoption and immediate enforcement of the statute Plaintiff has already begun to curtail these activities, as well as all manner of speech that could arguably fall under the statutes' ban on speech—fearing the draconian penalties that attach to each incident of marketing barred by the statute, including large fines per copy or reproduction of the communication and an award of actual damages and attorney's fees and costs to any prevailing plaintiff who brings an action alleging a violation of the statute.

38. The statute thus has the practical effect of wiping out a vital outlet for the free exchange of ideas related to the lawful possession and use of lawful "firearm-related products" and for the promotion and preservation of the "gun

culture" in Illinois through the passing down of pro-gun attitudes and traditions to future generations.

39. Both on its face and as evidenced by the legislative history of the statute, this appears be the very purpose and intent of the law.

40. As a proximate cause of the foregoing, Plaintiff has been damaged, and continues to be damaged, in that it:

A: Expends large sums of money to try to comply with the statute, and

B: Has lost business and customers who it has been unable to reach due to the statute, and

C: It unable to effectively and accurately communicate true facts to its customers and those in association with it, and

D. Has effectively been stifled in the accurate and free exchange of ideas, and

E. Is and remains at risk for damaging and destroying litigation directed at if Plaintiff does not comply in some alleged way with the statute, and

F. Has incurred and continues to incur attorney fees and litigation costs.

41. That some or all of these injuries and damages are irreparable.

WHEREFORE, Plaintiff humbly requests this Honorable Court enter judgment in its favor, and against Defendant Rauol, in his official capacity, enjoining him, and those in concert with him, from enforcing Public Act 103-0559, in whole or in part, against Plaintiff, and declaring same

unconstitutional, either facially, or as applied to Plaintiff, and awarding litigation costs and attorney fees in Plaintiff's favor, under 42 USC 1988, plus such other, further and different relief allowed by law or equity.

DATED: 8-28-2026

Respectfully submitted,

By: /s/ Thomas G. Maag

One of Their Attorneys
Thomas G. Maag #6272640
Peter J. Maag #6286765
Maag Law Firm, LLC
22 W. Lorena Avenue
Wood River, Illinois 62095
Telephone: (618) 216-5291
Facsimile: (618) 551-0421
lawmaag@gmail.com